IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION N.D., | ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| TOMPKINS & SOMMA LLC, et al., | ) ) ) |
| Defendants. | ) |

Civil Action Number
2:09-cv-1823-AKK

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff U.S. Bank National Association N.D.'s ("U.S. Bank") motion for attorneys' fees and costs against Defendants Tompkins & Somma LLC and Blake Tompkins ("Tompkins Defendants") and against counsel for the Tompkins Defendants ("Tompkins Defendants' Counsel"), doc. 177; U.S. Bank's motion to compel prejudgment interest against all Defendants, doc. 178; and U.S. Bank's Bill of Costs and the Tompkins Defendants' Objections, docs. 171, 185. For the reasons stated more fully herein, the motion to compel attorneys' fees and costs against the Tompkins Defendants and Tompkins Defendants' Counsel is **DENIED**. The motion to compel prejudgment interest is **GRANTED**, and U.S. Bank may recover **$70,616.84** from Defendant Pilar Guzman, **$70,616.84** from Defendant Eli Galuz, **$8,812.85** from Defendant Marc Anthony, and **$543.89** from the Tompkins Defendants in prejudgment interest.

Finally, the court taxes **$8,835.82** in costs against Defendants Pilar Guzman, Eli Galuz, and Marc Anthony.

## Analysis

On May 29, 2012, this court held a jury trial, and the jury returned a verdict in the form of special interrogatories. Doc. 169. On June 6, 2012, consistent with the jury verdict, the court entered a Judgment on the Jury Verdict ordering "judgment for U.S. Bank in the amount of $924,468.18 against Defendant Pilar Guzman; $924,468.18 against Defendant Eli Galuz; $703,809.98 against Defendant Marc Anthony; and $2,500.00 against" the Tompkins Defendants. *See* doc. 170. On June 15, 2012, U.S. Bank submitted its Bill of Costs, *see* docs. 171 – 176, and moved to compel payment of attorneys' fees and prejudgment interest, docs. 177-178. These motions are fully briefed, docs. 181 – 185, and ripe for adjudication.

**I.   Reasonable Expenses**

U.S. Bank moves to recover "reasonable expenses," including costs and attorneys' fees, on three theories: (1) pursuant to Fed. R. Civ. P. 37(c), U.S. Bank claims it is entitled to recover reasonable expenses incurred "to prove matters [the Tompkins] Defendants failed to admit in response to [U.S. Bank's] Request for Admissions," doc. 177, at 2; (2) pursuant to 28 U.S.C. § 1927 and Ala. Code § 12-19-270, U.S. Bank claims it is entitled to recover reasonable expenses because the Tompkins Defendants' Counsel "unreasonably and vexatiously multiplied these proceedings by asserting frivolous 'affirmative defenses' in bad faith and

substantially without merit" and also acted recklessly for the purpose of harassing U.S. Bank, doc. 177, at 2; and (3) the court should grant U.S. Bank reasonable expenses against both the Tompkins Defendants and their counsel pursuant to the court's inherent powers because these parties acted in bad faith with vexatious, wanton, and oppressive conduct, *id*. The court will address each theory of recovery in turn.

    A.    <u>Fed. R. Civ. P. 37(c)</u>

U.S. Bank contends that the Tompkins Defendants' sworn denials of certain Requests for Admissions required U.S. Bank to prepare for and present evidence at trial regarding these issues. U.S. Bank alleges that "there was virtually no dispute as to the truth of each" Request, and, as such, claims it is entitled to reasonable expenses pursuant to Fed. R. Civ. P. 37(c).[1] Doc. 177, at 3-

---

[1]This Rule provides in relevant part:

***Failure to Admit.*** If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
    (A) the request was held objectionable under Rule 36(a);

    (B) the admission sought was of no substantial importance;

    (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

    (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2). "This sanction encourages parties to identify undisputed issues early on as to avoid unnecessary costs." *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358

7.     Specifically, U.S. Bank argues that the Tompkins Defendants failure to admit the facts in question required U.S. Bank to prove at trial the following allegedly undisputed issues: that the Tompkins Defendants "(1) [w]ere precluded by the terms of the Closing Instructions from allowing the seller to contribute any more to the transaction than the disclosed $3,000 and that the borrower, defendant Pilar Guzman[,] was required to contribute the remaining $15,278.81; (2) [U.S. Bank] relied on the Tompkins[] defendants['] compliance with the HUD-1 that the borrower contribute $15,278.81; and (3) [t]he check and the funds in the amount of $15,278.81 w[ere] from the seller Marc Anthony, not from the borrower defendant Pilar Guzman." Doc. 177, at 4-5.

The court disagrees and finds no basis to award U.S. Bank any of its expenses. First, contrary to U.S. Bank's contentions, the Tompkins Defendants admitted that they were "prohibited from accepting more than $3,000 from the seller toward the closing costs." *See* doc. 177, at 3; doc. 177-5, at 3. This admission sufficiently addresses U.S. Bank's first contention for purposes of Fed. R. Civ. P. 37(c). The other related Requests cited by U.S. Bank are not worded so directly as to require an acceptance by the Tompkins Defendants. *See* doc. 177-5, at 3-5. Second, the Tompkins Defendants maintain ample justification for refusing to admit that U.S. Bank "relied on the representation in the HUD-1 Settlement Statement . . . ." *See id.* at 6-7. After all, the Tompkins Defendants could not

---

F.3d 1312, 1326 (11th Cir. 2004).

possibly have any inclination into U.S. Bank's state of mind. Finally, U.S. Bank asked the Tompkins Defendants to admit that seller Mark Anthony actually provided the funds the borrower Pilar Guzman needed to close the loan. The Tompkins Defendants adamantly denied this knowledge, and, in fact, the parties heavily contested the Tompkins Defendants' knowledge of the source of the $15,278.81 at trial. Significantly, the Tompkins Defendants prevailed on this issue because the jury found that they acted negligently—but made *no intentional misrepresentations*. *See* doc. 169, at 5. Thus, U.S. Bank is also not entitled to relief under Rule 37(c)(2) for this third contention because U.S. Bank failed to prove "the matter true."

Indeed, the Tompkins Defendants aptly cite *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1269 (11th Cir. 2002), for the proposition that "[t]he implicit message of Rule 37 is . . . that issues *obviously subject to dispute should be resolved at trial*, not in a discovery motion." *Id.* (emphasis in original); *see* doc. 181, at 3. And, here, the issues of U.S. Bank's reliance and the Tompkins Defendants' knowledge regarding the source of closing funds were unequivocally subject to dispute and, thereby, proper for trial instead of a Request for Admission. Therefore, the court **DENIES** U.S. Bank's Rule 37(c) motion for relief.

    B.    <u>28 U.S.C. § 1927 and Ala. Code § 12-19-270</u>

U.S. Bank next contends that it is entitled to recover attorneys' fees and costs from the Tompkins Defendants' Counsel pursuant to 28 U.S.C. § 1927 and Ala. Code § 12-19-270 because counsel purportedly acted in bad faith by

continually litigating certain affirmative defenses. *See* doc. 177, at 7-9. Title 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. To prevail on a motion under this statute, the requesting party must therefore demonstrate that the attorney "'[1] engage[d] in unreasonable and vexatious conduct; [2] this conduct must multiply the proceedings; and [3] the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct.'" *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)). Moreover, "[a]n attorney multiplies the proceedings unreasonably and vexatiously 'only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Id.* (quoting *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)). And finally, "[b]ad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim." *Id.*

Similarly, Ala. Code §§ 12-19-270 *et seq* (the "Alabama Litigation Accountability Act") provides in relevant part:

> Except as otherwise provided in this article, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a

claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part . . . .

Ala. Code § 12-19-272(a).  For purposes here, the Act defines "without substantial justification" as a defense that is "frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation, as determined by the court."  Ala. Code § 12-19-271(1).  Moreover, the Act provides twelve non-exclusive factors for courts to consider in awarding attorneys' fees, including, *inter alia*, "[w]hether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose."  Ala. Code § 12-19-273(5).

U.S. Bank claims that it can establish the requisite showing because the Tompkins Defendants abandoned all affirmative defenses, but subsequently "resurrected" the affirmative defenses of contributory negligence, proximate cause, and set-off in the initial Pre-Trial Order.  Doc. 177, at 8 (citing doc. 84, at 15).  Moreover, U.S. Bank maintains that, after the court found that Defendants could not utilize a contributory negligence affirmative defense, the Tompkins Defendants continued to seek relief under this defense, as well as proximate cause, set-off, and assumption of risk, and asserted these affirmative defenses throughout trial until they abandoned them for the final Jury Charges.  *Id.* at 8-9 (citing doc. 117; doc. 127, at 23-25).

The court finds no evidence of bad faith by the Tompkins Defendants' Counsel or any other evidence indicating unreasonable and vexatious conduct.  To

the contrary, based on this court's direct observations, the Tompkins Defendants' Counsel acted at all times professionally and in good faith.  Namely, before trial, counsel for both parties presented argument regarding the availability of certain affirmative defenses including contributory negligence.  While the court ultimately sided with U.S. Bank, the arguments presented by the Tompkins Defendants' Counsel were certainly legitimate and advanced in good faith to zealously advocate on behalf of their clients.  Their persistent attempt to demonstrate various questionable components of U.S. Bank's conduct as it related to the loan in question revealed a viable case theory and was in no sense frivolous.  Furthermore, the concession of certain affirmative defenses at trial fails to constitute tacit admission of bad faith.  *See* doc. 177, at 9.  After all, counsel may choose for strategic reasons to abandon certain defenses or to not cloud the Jury Charge with potentially unnecessary law.  This abandonment is hardly evidence of bad faith or unreasonable conduct.

U.S. Bank also argues that the Tompkins Defendants' Counsel acted in bad faith and vexatiously by reneging on an agreement regarding U.S. Bank's compensatory damages.  *Id.* at 10.  Critically, however, the Tompkins Defendants dispute any such agreement, doc. 156, and the court already ruled for Defendants on this issue at trial.  Moreover, the fact that the Tompkins Defendants never challenged the damages calculations at trial also fails to support a bad faith allegation.  Simply stated, at trial, U.S. Bank retained the burden to prove its claims—including the amount of damages suffered from any purported illegal

behavior. Furthermore, it is within the Tompkins Defendants' legitimate prerogative to decide, based on the progression of the trial, that challenging U.S. Bank's damages is unnecessary because U.S. Bank failed to prove the underlying liability. And indeed, the jury only awarded U.S. Bank $2,500 against the Tompkins Defendants—the amount of legal fees Tompkins Defendants received from the transaction at issue.

In sum, neither 28 U.S.C. § 1927 nor Ala. Code § 12-19-270 warrants the court awarding U.S. Bank reasonable expenses from the Tompkins Defendants or their Counsel, and the court **DENIES** relief under these statutes.

C.     Court's Inherent Power to Award Fees

Lastly, U.S. Bank asks the court to utilize its "inherent powers" to award attorneys' fees and costs against both the Tompkins Defendants and their counsel. Doc. 177, at 11-12.[2] The Eleventh Circuit explains that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). "'A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering

---

[2]This "inherent power" is often referred to as "the bad faith exception to the 'American Rule' against fee shifting." *United States v. Int'l Bhd. of Teamsters, Chauffeurs*, 948 F.2d 1338, 1345 (2d Cir. 1991). *See also Byrne v. Nezhat*, 261 F.3d 1075, 1106 n.68 (11th Cir. 2001), *abrogation on other grounds recognized by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1151 (11th Cir. 2011).

enforcement of a court order.'" *Id.* (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). For the reasons previously stated, the court finds no evidence of bad faith by the Tompkins Defendants or their counsel. Therefore, the court **DECLINES** to utilize its inherent power to compel payment of U.S. Bank's attorneys' fees and costs.

## II.    Prejudgment Interest

U.S. Bank also moves to compel payment of prejudgment interest against all Defendants at 6% of the compensatory damages awarded.[3] Doc. 178. "In diversity cases, the availability and amount of prejudgment interest is ordinarily governed by state law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007). The Eleventh Circuit also opined that "Alabama law [] permits an award of prejudgment interest in cases of fraud where the unliquidated damages may be ascertained by mere computation or where the damages are complete at a given time so as to be capable of determination at such time in accordance with known standards of value." *Braswell v. Conagra, Inc.*, 936 F.2d 1169, 1177 (11th Cir. 1991) (citing *Lapeyrouse Grain Corp. v. Tallant*, 439 So. 2d 105, 111-12 (Ala. 1983)). Put simply, "prejudgment interest may be awarded on compensatory damages in fraud or breach of contract claims so long as the damages are a sum capable of being made certain." *Id.*

Here, as it relates to Defendants Pilar Guzman, Eli Galuz, and Marc

---

[3]The jury awarded compensatory damages of $324,468.18 each against Pilar Guzman and Eli Galuz, $40,500.00 against Marc Anthony, and $2,500.00 against the Tompkins Defendants.

Anthony, the jury found these individuals liable to U.S. Bank for mortgage fraud and civil conspiracy and awarded compensatory damages. Given that the very nature of mortgage fraud concerns a lender extending a sum certain of money due to reasonable reliance on misrepresentations, compensatory damages fit within the paradigm of *Braswell* and *Lapeyrouse*. As stated by the Alabama Supreme Court, "the unliquidated damages aspect of the tort rule does not prevent prejudgment interest here, because of the ease and certainty with which those damages can be ascertained. Once the jury reached a factual conclusion from the evidence as to the price differential, the compensatory loss could be fixed by a simple mathematical computation." *Lapeyrouse*, 439 So. 2d 105, 112 (Ala. 1983) (citing *Atlanta & Birmingham A.L. Ry. Co. v. Brown*, 48 So. 73 (1908)). Accordingly, the court **GRANTS** the motion for prejudgment interest, and U.S. Bank may recover **$70,616.84** from Pilar Guzman, **$70,616.84** from Eli Galuz, and **$8,812.85** from Marc Anthony.[4]

Similarly, the court **GRANTS** the motion for prejudgment interest against the Tompkins Defendants. The jury found that the Tompkins Defendants breached the Alabama Legal Services Liability Act standard of care by engaging in negligent conduct and awarded U.S. Bank $2,500 in compensatory

---

[4] The court agrees with U.S. Bank that, absent any contractual language, Alabama law requires use of the 6% common law interest rate. *Nelson v. AmSouth Bank, N.A.*, 622 So. 2d 894, 896 (Ala. 1993). *See also Mega Life and Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1406-07 (11th Cir. 2009). Furthermore, the court agrees with the October 21, 2008 start date for incurring interest—i.e., the date U.S. Bank foreclosed on Anthony's property. *See* doc. 127, at 6.

damages—the amount paid to the Tompkins Defendants for closing the underlying real estate transaction at issue. This is a sum certain for compensatory damages. In other words, once the jury found a breach of the standard of care, and that the loss suffered as a result of this breach constituted the fee paid for services rendered, the "compensatory damages are certain." *See Braswell*, 936 F.2d at 1177.

Indeed, as compensatory damages equate the precise legal fee paid, the court finds the Tompkins Defendants' reliance on *Health Care Auth. of Huntsville v. Madison Cnty.*, 601 So. 2d 459, 462-63 (Ala. 1992), misplaced. In *Health Care Authority*, the Alabama Supreme Court upheld the trial court's refusal to award prejudgment damages to the plaintiff hospital because the hospital failed to produce itemized claims for reimbursement. The hospital filed suit against the county seeking reimbursement for involuntary state commitments; however, to recover against a county, Alabama law requires itemized expenses as opposed to an aggregate bill. Because the hospital only submitted aggregate bills, the Court agreed "that the hospital's claim was not certain, in that neither the individual accounts for which the hospital could recover, nor the exact amount recoverable for those claims allowed, was 'certain' until the trial court's final judgment." *Id.* at 662. In contrast, here, upon finding liability for breach, the compensatory damage calculation became certain based on the fees paid for the legal services. Accordingly, U.S. Bank may recover **$543.89** from the Tompkins Defendants.

**III.   Bill of Costs**

"Prevailing parties are entitled to receive costs under Fed. R. Civ. P. 54(d)." *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). Indeed, Fed. R. Civ. P. 54(d)(1) states: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees— should be allowed to the prevailing party." Rule 54(d) "establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise." *Chapman v. AI Transport*, 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc) (citations omitted). A district court's discretion "is not unfettered," and "[t]o defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." *Id*. at 1039 (citations omitted).

However, "Rule 54(d) does not give district judges 'unrestrained discretion to tax costs to reimburse a litigant for every expense he has seen fit to incur in the conduct of his case.'" *Fulton Fed. Sav. & Loan Ass'n of Atlanta v. Am. Ins. Co.*, 143 F.R.D. 292, 294-95 (N.D. Ga. 1991) (quoting *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)). Instead, a district court awards costs pursuant to 28 U.S.C. § 1920, which allows the taxation of costs for: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts

and interpreters, and salaries, fees, expenses, and costs of special interpretation services." *Id.* Moreover, "federal courts are bound by the limitations set out in . . . § 1920" and may not expand that list without explicit statutory authority. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).

As the prevailing party in this litigation, U.S. Bank is entitled to recover its costs pursuant to Fed. R. Civ. P. 54(d). *See also* doc. 170. However, in applying 28 U.S.C. § 1920, the court finds certain expenses listed in the Bill of Costs, *see* doc. 171, improper, and, as such, declines to grant U.S. Bank these costs.

A.   Improper Costs

U.S. Bank provides that it spent $18,574.60 in "[t]ravel related expenses and Federal Express charges." *See* doc. 171. These costs are simply not recoverable. Indeed, the Eleventh Circuit specifically instructs that "meals, courier/postage, Lexis-Nexis research, air fare, and lodging are not included under § 1920." *Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 846 (11th Cir. 2008). *See also Williams v. R. W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1317 (S.D. Fla. 2009); *Weller v. Finger*, No. 08-0240-CG-C, 2010 WL 2465522, at *7 (S.D. Ala. June 15, 2010) ("Under § 1920, travel expenses are not taxable costs.").[5] Accordingly, the court decreases U.S. Bank's recoverable costs by

---

[5] The Eleventh Circuit allowed travel costs in *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994); however, "*Cullens* is limited to civil rights actions under 42 U.S.C. § 1988, and not requests for costs under 28 U.S.C. § 1920." *Williams*, 657 F. Supp. 2d at 1318.

**$18,574.60**.  *See* docs. 171, 174, 175, 176.[6]

Moreover, U.S. Bank attempts to recover $6,215.00 for William H. Halbrooks' expert witness fees.  *See* doc. 171, doc. 173-1.  "We need not labor long concerning this issue because it is well settled that expert witness fees cannot be assessed in excess of witness fees provided in [28 U.S.C.] § 1821."  *Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1289 (11th Cir. 1983).[7]  *See also*

---

[6] It is not surprising that the statute excludes travel costs since they are typically unreasonably high. For example, here, U.S. Bank attested to the fact that a $430.00 private car service ("Steller Transportation, LLC") for its counsel to and from the airport was "necessarily incurred in this action."  *See* doc. 175, at 5-6; doc. 171. The court does not have to explore whether more cost effective modes of transportation existed since these costs are not recoverable under § 1920.

[7] This statute provides in relevant part:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section . . . .

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General

*Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("Plaintiff's affidavits appear to include costs such as . . . expert witness fees, which are clearly nonrecoverable."). Put simply, "[u]nder 28 U.S.C. § 1920(3), expert witness fees are taxable as costs just as are any other witness fees. 28 U.S.C. § 1821 governs the amount of witness fees authorized. Although some courts have at times allowed expert witness fees in excess of those amounts to be taxed as costs, the Eleventh Circuit has, however, declined to allow expert witness fees in excess of the statutory per diem fee as taxable costs." *Ageloff v. Delta Airlines, Inc.*, 860 F.2d 379, 390 (11th Cir. 1988). Thus, U.S. Bank is only entitled to recover the $40.00 per diem fee for William Halbrooks' trial and deposition attendance and Mr. Halbrooks' $15.00 parking expense, i.e. a total of $95.00. 28 U.S.C. §§ 1821(b), (c)(3). *See also* doc. 173-1. As such, the court reduces U.S. Bank's taxable costs by **$6,120.00**.

The court finds U.S. Bank's other costs proper, and, therefore, the court **taxes costs in the amount of $8,835.82** against Defendants Pilar Guzman, Eli

---

Services.

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title . . . .

28 U.S.C. § 1821.

Galuz, and Marc Anthony.

    B.    <u>Tompkins Defendants</u>

In opposition to U.S. Bank's Bill of Costs, the Tompkins Defendants argue, *inter alia*, that the court should deny recovery of any costs against them. *See* doc. 185, at 2-4. The court agrees. Generally, "[w]here each of the parties has prevailed on one or more of its claims, defense[s] or counterclaims, the district court has broad discretion in taxing costs." *Johnson v. Nordstrom-Larpenteur Agency, Inc.*, 623 F.2d 1279, 1282 (8th Cir. 1980) (citing *Cornwell Quality Tools Co. v. C.T.S. Co.*, 446 F.2d 825, 833 (9th Cir. 1971)). Here, the jury found that the Tompkins Defendants breached the standard of care by engaging in negligent conduct; however, the jury found for the Tompkins Defendants on the negligent misrepresentation and intentional misrepresentation standard of care issues. And, the jury only awarded U.S. Bank $2,500.00 in compensatory damages, rather than the $324,468.00 U.S. Bank requested. Put simply, the court finds that both U.S. Bank and the Tompkins Defendants "prevailed" in this litigation, and, as such, declines to tax costs against the Tompkins Defendants. In contrast, the jury found Defendants Pilar Guzman and Eli Galuz liable for fraud, misrepresentation, and civil conspiracy, and awarded $924,468.18 each against Guzman and Galuz. Similarly, the jury found Defendant Marc Anthony liable for unjust enrichment and civil conspiracy and awarded $703,809.98 against Anthony. *See* doc. 169.

Thus, as stated previously, U.S. Bank may recover $8,835.82 in costs from Defendants Pilar Guzman, Eli Galuz, and Marc Anthony.

**DONE** the 13th day of September, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE